| | |
|---|---|
| LIMESTONE TRAIL APARTMENTS GP, LLC et al., <br>    Plaintiffs, | Case No. 3:25-cv-00814 |
| v. | Judge Eli J. Richardson <br> Magistrate Judge Luke A. Evans |
| TAX CREDIT HOLDINGS - LIMESTONE TRAIL, L.L.C. et al., <br>    Defendants. | |

## <u>MEMORANDUM ORDER</u>

Pending before the Court is a motion by plaintiffs Limestone Trail Apartments GP, LLC and Aventurine One, LLC, and third-party defendants Caryn Winter and Oracle Consulting Services, LLC—"Limestone General" collectively—to compel certain discovery responses under Rule 37 of the Federal Rules of Civil Procedure.[1] Limestone General wants defendants Tax Credit Holdings – Limestone Trail, L.L.C. (the "Limited Partners"), Affordable Equity Partners, Inc. (the "Limited Partner Agent"), and Bear Holdings, L.L.C. d/b/a JES Holdings, LLC (the "Limited Partner Parent") to provide full responses to certain requests for production and interrogatories that it believes will help establish that "Defendants have engaged in a conspiracy to blame Plaintiffs" (Doc. No. 71 at 3) for problems with a construction project that led to Limestone

---

[1]    Technically, the motion does not mention Rule 37. The parties' joint discovery dispute statement (Doc. No. 68), however, did refer to Local Rule 37.01, which is keyed to Rule 37. *See* Fed. R. Civ. P. 83(a)(1); Admin. Ofc. Memo, *Uniform Numbering System for Local Rules of Court* (Apr. 15, 1997), *available at* https://www.uscourts.gov/sites/default/files/uniform_numbering_ system_for_local_rules_of_court_april_1996.pdf (last visited May 27, 2026). In any event, "Rule 37 establishes the means for the courts to make effective Rules 26 through 36, the discovery rules." *Baymont Franchising, LLC v. Heartland Props.*, No. 3:05CV-748-S, 2006 WL 8457590, at \*2 (W.D. Ky. Nov. 14, 2006) (citation omitted).

General's removal as the general partner for that project. Although the production requests and interrogatories at issue appear to have been served specifically on the Limited Partners and the Limited Partner Agent, the Limited Partner Parent responded to the motion by asserting that it had no responsive information because it "is simply the holder in trust of a 401(k) account and does not engage in any other business." (Doc. No. 72 at 2.) The Limited Partners and the Limited Partner Agent oppose the motion, arguing that the difficulty in producing the discovery sought is disproportionate to its relevance to the claims in this case. An additional argument in opposition is that at least some of the discovery sought postdates Limestone General's removal as general partner and thus would be irrelevant to why the removal occurred.

The Court has decided, under Rule 78(b), that a hearing on the motion is not necessary. For the reasons below, the Court grants the motion in part.

## I.      Background

For the sake of brevity, familiarity with the background of this case is presumed, but the Court will recite a few major details. This case concerns a project (the "Project") to build a low-income apartment complex called the Limestone Trail Apartments in Lebanon, Tennessee. On December 21, 2021, Limestone General and the Limited Partners entered an amended limited partnership agreement to create Limestone Limited for the purpose of pursuing the Project. (Doc. No. 1-1.) Among numerous provisions in the limited partnership agreement, Sections 7.1 and 7.2 gave Limestone General authorization to acquire property, to construct buildings for the Project, to borrow money, and to execute certain specific documents "and all such other documents as the General Partner deems necessary or appropriate in connection with the acquisition, development and financing of the Apartment Complex." (Doc. No. 1-1 at 37.)

The record established so far suggests that multiple problems arose as Limestone General tried to put the elements of the Project together. For example, in its own complaint, Limestone

2

General asserts that it had to accept Fairway Construction Co., Inc. (the "Limited Partner Contractor") as the general contractor because it was "under duress and had no choice" just 10 days before a critical financing deadline. (Doc. No. 1 at 26.) Timing allegedly became a problem because Limestone General found out that its preferred general contractor was not bonded. (*Id.*) Left unsaid is how Limestone General failed to learn, until 10 days before the financing deadline, that 1) its preferred general contractor was not bonded; 2) a bonded general contractor would be necessary for the Project; and 3) the Limited Partner Contractor also was not bonded—which in turn raises the question of why the preferred general contractor could not be "excepted from the bonding requirement." (Doc. No. 1 at 28.) Additionally, correspondence attached to the complaint seems to suggest that bonding by the deadline in question was not actually necessary as long as Limestone General provided proof of payment transactions and confirmation of no mechanic's liens. (Doc. No. 1-6 at 3.)

To take another example, the principal arrangements for the Project closed in December 2021, but by March 2022, the Project already was facing issues of cost overruns. (Doc. No. 1-9 at 2.) On February 14, 2024, the Limited Partners advised Limestone General that they would provide additional loan financing to pay outstanding construction costs and that they considered Limestone General in breach of its obligations regarding funding and project deadlines. (Doc. Nos. 1-8, 1-10.) The notice of default prompted a flurry of correspondence debating, among other things, whether the Limited Partners wrongfully withheld certain installment payments that added to the financial stress of the Project or whether the Limited Partners rightfully withheld payment contingent on inspections of certain Project records. (Doc. Nos. 1-12 through 1-16 at 6.) While Limestone General and the Limited Partners debated how the funding problems originated, subcontractors began filing mechanic's liens. (Doc. No. 1-16 at 9–39.) On June 16, 2025, the

3

Limited Partners invoked Sections 10.3 and 10.4 of the limited partnership agreement to remove Limestone General as general partner. (Doc. Nos. 1-22, 1-23.)

On July 18, 2025, Limestone General filed a complaint containing six counts alleging that it was wrongfully removed as general partner; that the Limited Partners breached development contracts for the Project; that all defendants tortiously interfered with development contracts or aided and abetted tortious interference; and that all defendants committed fraud by inducing it to accept changes to the parameters of the Project that increased costs and left it with insufficient funds to pay financial obligations. Limestone General has reiterated in the pending motion that defendants "collusively coerced and defrauded Plaintiffs into acquiescing to the payment of change orders and costs that did not stem from legitimate changes to the work but were due to [the Limited Partner Contractor's] ineptitude in bidding and constructing the Projects." (Doc. No. 71 at 6.) Why Limestone General would feel coerced into acquiescing to ineptitude—as opposed to declaring its own breaches of relevant contractual provisions—is unclear.

The brief highlights that the Court summarized above provide context for the motion to compel that Limestone General has filed. During the course of discovery, Limestone General served the Limited Partners and the Limited Partner Agent with various document requests and interrogatories that met with objections. Limestone General now wants to compel production and responses, and the Court will review each of the requests and interrogatories below.

II.     **Discussion**

"Generally, Federal Rule of Civil Procedure 26(b) enables parties to discover any unprivileged evidence or information relevant to their claim. However, district courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citations omitted). The Court's discretion to manage discovery works in

4

tandem with its authority under Rule 37(a)(3)(B) to compel discovery responses. Under Rule 37(a)(3)(B), the moving party has the initial burden to establish that the information sought is relevant. *O'Malley v. NaphCare Inc.*, 311 F.R.D. 461, 463 (S.D. Ohio 2015) (citation omitted). "If that burden is met, the opponent must show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive." *Riddick v. S&P Data Ohio, LLC*, No. 1:20-CV-1000, 2021 WL 4713396, at *1 (N.D. Ohio Apr. 16, 2021) (citation omitted). "An order denying further discovery will be grounds for reversal only if it was an abuse of discretion resulting in substantial prejudice." *Ghandi v. Police Dep't of City of Detroit*, 747 F.2d 338, 354 (6th Cir. 1984) (citations omitted).

### A. Economic Motivations, Expectations, and Intent

The Court first will examine Interrogatory Nos. 5–6 and 15–18; along with production request Nos. 11–16, 63–64, and 66–69. Interrogatories 5 and 6 effectively seek to identify all current and prospective owners and investors in the Limited Partners. (Doc. No. 71-6 at 9.) Interrogatories 15 through 18 would have the Limited Partners and the Limited Partner Agent disclose financial projections, expected returns, and other expected benefits from their involvement in the Project. (*Id.* at 14–15.) Requests 11 through 16 seek a very broad range of documents that the Limited Partners and the Limited Partner Agent might have generated internally when assessing whether the Project would be financially worthwhile and what the expected financial return might be. (Doc. Nos. 71-5 at 7–9.) Requests 63 and 64 effectively seek to identify all direct and indirect owners and investors in the Limited Partners. (*Id.* at 25.) Requests 66 through 69 seek an unlimited range of documents concerning valuations, internal affairs, and internal fund distributions for the Limited Partners. (*Id.* at 26–27.)

The Court questions the relevance of nearly every document that would be included in these combined requests. The requests include no date range and could cover a wide range of information that Limestone General should have pursued as due diligence in 2020 and 2021, when

it reorganized the partnership to admit the Limited Partners. (Doc. No. 1 at 21.) Once the partnership agreement and associated Project agreements were signed, what financial return the Limited Partners thought that they might receive is not relevant to whether cost overruns, missed deadlines, mechanic's liens, and the withholding of payments breached specific terms of those documents. Either those events breached provisions of the agreements or they did not, and Limestone General has not shown how motives and expectations would be an element to proving breach of contract at trial. *Cf. King v. Nw. Mut. Life Ins. Co.*, No. 3:24-CV-00737, 2025 WL 2800007, at *10 (W.D. Ky. Sept. 30, 2025) (noting that "motive, credibility, and bias are not relevant to determining contractual issues"); *ARC Res. Mgmt., Inc. v. Civ., LLC*, No. CV 20-27, 2024 WL 4445693, at *3 (E.D. Ky. Oct. 8, 2024) (denying motion to compel evidence of a party's financial state and motives as irrelevant to determining breach of contract). At most, a narrow subset of documents within the requests might be relevant to Limestone General's claims for tortious interference and fraud, if any documents exist indicating that the Limited Partners discussed removing Limestone General even before entering the partnership agreement and declaring a formal breach. Accordingly, the Court will grant the pending motion in part to consolidate all of the requests discussed above into a single request to which the Limited Partners and Limited Partner Agent must respond: "For the period running from November 1, 2020 through June 16, 2025, produce copies of any hard-copy or electronic communication in your possession that contains the following combination of words: the word 'Limestone'; the words 'breach' or 'default' including gerund or participial variations; and the numbers '10.3' or '10.4.'"

The principal legal authorities that Limestone General cited in its motion do not change the above analysis. The orders in *MMA Clarksville Apartments, LLC et al. v. Crossland Ventures GP, LLC*, No. 22-0751-III (Davidson Co. Chancery Ct. Sept. 4, 2023) (Doc No. 68-6); in *CED Capital*

6

*Holdings X, Ltd. et al. v. CTCW-Waterford East, L.L.C.*, No. 2019-CA-002758-0 (Fla. Cir. Ct. Aug. 17, 2021) (Doc No. 68-7); and in *AHI-Town Parc, LLC v. Multi-Housing Tax Credit Partners, LII, L.P.*, Case No. 112049-B-CV (Tex. Dist. Ct. Aug. 1, 2025) (Doc No. 68-9), are all recitations of the outcomes of hearings and provide no context for why certain documents were of "great importance" to those cases. *Full Circle Villagebrook GP, LLC v. Protech 2004-D, LLC*, No. 20 C 7713, 2022 WL 2339947 (N.D. Ill. June 29, 2022) was a fight over the value of a certain purchase option and had nothing to do with removing a general partner over construction project failures. Finally, *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671 (Tenn. 2019), was a fight over commissions for new and renewed insurance policies and ended with a holding that "that BlueCross breached the 2009 Agency Agreement by refusing to pay post-termination commissions to [plaintiff] and instead paying post-termination commissions directly to the producing agents." 566 S.W.3d at 703. Reaching that holding required revisiting the familiar principle that "in interpreting a fully integrated contract, extrinsic evidence may be used to put the written terms of the contract into context, but it may not be used to vary, contradict, or supplement the contractual terms in violation of the parol evidence rule." *Id.* at 698. The case had nothing to do with vast amounts of discovery sought to determine economic motivations and expectations.

## B. Financial Statements and Reports

The Court next will address production requests 73 and 74. For a period from March 1, 2025 through the present, Requests 73 and 74 sought all partnership quarterly and annual financial reports along with "[a]ll documents (including drafts) prepared and/or distributed pursuant to Section 19.7 of the [partnership agreement]." (Doc. No. 68-1 at 72.) Limestone General argues that it is "entitled to receive" these documents under Section 19.7 of the partnership agreement (Doc. No. 71 at 22), but it appears to have inverted how Section 19.7 operates. Section 19.7, titled

"Information to Partners," states that "[t]he General Partner shall cause to be prepared and distributed to all Persons who were Partners at any time during a Fiscal Year of the Partnership" a list of various financial statements. (Doc. No. 1-1 at 89.) Section 19.7 obligates the general partner to furnish other certifications and forms as well. Under Section 19.7, therefore, Limestone General would have had possession of all the documents in question through June 16, 2025 because it was the general partner and because it had the obligation to produce those documents for others. Limestone General has not adequately explained why it would be entitled to receive documents that it was responsible for generating and why it would be entitled to receive any of these documents after its removal on June 16, 2025. Accordingly, the Court denies this portion of the pending motion.

### C. Newnan Partnership

In Requests 76 and 77 and Interrogatory 10, Limestone General sought financial records for an "entirely separate" (Doc. No. 1 at 4) partnership known as Oracle Newnan 2018, LP or the "Newnan Partnership."[2] (Doc. No. 68-1 at 74–75.) Specifically, Limestone General sought documents that the general partner in the Newnan Partnership would have produced and distributed under a Section 19.7 of that partnership agreement that apparently was substantially similar to Section 19.7 of the partnership agreement in this case. Through Interrogatory 10, Limestone General wanted identification of "all persons who were consulted about or otherwise participated in discussions and decision-making related to the removal of McIntosh Woods General Partner via the 6/16/25 Newnan Removal Notice." (Doc. No. 68-1 at 24.) Limestone General sought information about a different partnership because "this information will likely confirm that the

---

[2] The requests refer to a "McIntosh Woods Partnership," but one of the definitions in the partnership agreement clarifies that McIntosh Woods refers to Oracle Newnan 2018 GP, LLC, a Georgia limited liability company. (Doc. No. 1-1 at 21.)

same individuals/decision-makers were involved in the pretextual removals of both general partners from both Partnerships on the same day and, thus, further confirm Defendants' overall concerted scheme." (Doc. No. 71 at 25.) Information from a different partnership, however, would not be relevant to the cost overruns and to the mechanic's liens that occurred here except to establish a propensity for those kinds of events. Limestone General has not sufficiently established how propensity would help at trial to satisfy elements of the claims in the complaint. The Court accordingly denies this portion of the pending motion.

### D. Investors and Default Notice

Through Interrogatory 7, Limestone General sought to "[i]dentify all investor(s) in [the Limited Partners] and/or persons with an Ownership Interest in the Partnership who were involved in the alleged issuance of the notice of default referenced at paragraph 163 of the Complaint." (Doc. No. 71-6 at 10.) Paragraph 163 of the complaint, in turn, refers to the February 14, 2024 notices of breach and alleges a conversation that revealed that the notices issued because an unspecified investor of the Limited Partners had sent the Limited Partners its own notice of default. (Doc. No. 1 at 37–38.) Interrogatory 7 overlooks that the final decision to issue the February 14, 2024 notices and the June 16, 2025 removal rested with the Limited Partners, which means that the Limited Partners ultimately face any liability for those decisions. Whether the Limited Partners made the decisions on their own, or whether a third party influenced the decisions, is irrelevant to whether the decisions were justified by objectively verifiable violations of applicable agreements. Additionally, the modified request that the Court crafted above in Part II(A) will suffice to uncover information that Limestone General will need for its claims of tortious interference and fraud. Accordingly, the Court denies this portion of the pending motion.

### E.  Preparation of Responses

Finally, Limestone General in Interrogatory 1 sought the identity of "every person that you contacted or consulted with in connection with in providing answers to these Interrogatories." (Doc. No. 71-6 at 4.) The Limited Partners and the Limited Partner Agent responded that counsel "assisted in the preparation of these answers." (Doc. No. 71-6 at 4.) Since the Limited Partners and the Limited Partner Agent are not natural persons, they would not in themselves have been able to provide substantive information to counsel to prepare responses. One or more people would have had to play a role analogous to a Rule 30(b)(6) representative to provide the substantive information. *Cf. Lamb v. Hazel*, No. 5:12-CV-00070, 2013 WL 1411239, at *3 (W.D. Ky. Apr. 8, 2013) (compelling identification of "all persons who prepared or assisted Plaintiff is preparing his response to these interrogatories" because the question was "routine" and related to obligations under Rule 26(a)).  Accordingly, the Court grants the pending motion in part to direct the disclosure of whoever played that role to provide substantive information to counsel.

### III.  Conclusion

For all of the foregoing reasons, the Court GRANTS the pending motion to compel (Doc. No. 71) IN PART to require, on or before June 17, 2026, responses to the modified discovery requests that the Court set forth in Parts II(A) and III(E) above. The Court DENIES the pending motion in all other respects.

It is so ORDERED.

LUKE A. EVANS
United States Magistrate Judge